Robinson v. Shanks et al.

Filed March 27, 1889.

———◆———

No. 13,223.

ROBINSON v. SHANKS ET AL.

ARBITRATION.—*Award.*—*Setting Aside of.*— *Cause for.*—An award will be set aside when the arbitrators, after their appointment, and while engaged in the discharge of their duties, partake of hospitalities, in the way of lodging and meals, from one of the litigants. The same influences or misconduct that would avoid the verdict of a jury, ought to avoid an award.

SAME.—*Attentions Bestowed on Arbitrators.*—*Influence of, Immaterial.*—It is immaterial whether the arbitrators were in fact influenced by such attentions or not. Their acceptance of them is sufficient to invalidate the award.

SAME.—*Assessment of Costs.*—Where an award is set aside on account of the misconduct of one of the parties, it is proper to tax such party with the costs made in the trial before the arbitrators.

SAME.—*Oral Testimony of Arbitrators.*— *When Admissible.*—Where affidavits of arbitrators are filed in support of the award they have made, the court, in its discretion, may call the arbitrators and examine them orally in relation to the matters about which they have testified in their affidavits.

SAME.—*Setting Aside of Reference.*—*Trial by Court.*—Where a case is sub-

mitted to certain arbitrators by name, and their award is set aside, it is the duty of the court, unless the parties agree upon other arbitrators, to set aside the reference and try the cause in its regular turn.

EVIDENCE.—*Admissibility of.—Must be Embraced Within the Issues.*—Under a complaint seeking a recovery for damages occasioned by the overflowing of the plaintiff's land, washing away tiling, etc., evidence is not admissible as to any expense incurred by the plaintiff in his efforts to keep the water off of his land, such an isssue not being embraced within the pleadings.

SAME.—*Irrelevant Testimony.—Rebuttal of.*—If testimony is erroneously admitted in rebuttal of irrelevant testimony introduced by the other party, it is a harmless error, for which the cause will not be reversed.

SAME.—*Conflicting Evidence.—Setting Aside of Verdict.*—Where the evidence in a cause is conflicting, the verdict will not be disturbed on the weight of the evidence.

WATERCOURSE.—*Obstruction of.—Instructions.*—As to what constitutes a running stream or watercourse, for the obstruction of which an action will lie, see instructions set forth in opinion.

INSTRUCTIONS.—*Must be Considered Together.*—Instructions are to be considered as a whole, and not in detached portions.

From the Dearborn Circuit Court.

*J. K. Thompson,* for appellant.

*N. S. Givan,* for appellees.

COFFEY, J.—This suit was brought by the appellant against the appellees in the circuit court of Dearborn county, the complaint charging that the appellant and the appellee Rachel Shanks are adjoining land-owners; that there is an ancient watercourse, called Leeper's run, passing through said appellee's land and across the line dividing their lands; that for more than twenty years the water discharged from said watercourse was carried off by an artificial canal, constructed by appellant's grantor on appellant's land, into another stream called Salt Fork of Tanner's creek, thus protecting appellant's land from overflow; that, on the 1st day of November, 1883, the appellees unlawfully and wrongfully, at a point ten to fifteen rods above where said Leeper's run crosses the line dividing the lands of appellant from the lands of appellee Rachel, and empties into said artificial canal, obstructed

said Leeper's run by constructing a dam across the bed and channel thereof, by filling the same with brush and stones, and by digging an artificial channel so as to conduct the water flowing down said watercourse to a point on said dividing line about eight rods west from where the natural channel of said run crossed the same, and wholly diverting the water discharged therefrom away from said artificial canal; that, by reason of diverting said watercourse, the water discharged therefrom has been thrown upon the land of the appellant, rendering five acres thereof, worth five hundred dollars, wet and marshy and incapable of cultivation, washing away the soil, and in hard rains washing stones upon the surface thereof, and washing away tiles placed therein to drain the same, and during the current year, by reason of the overflow of said land, caused by said diversion, appellant lost five acres of corn of the value of one hundred dollars.

The appellees filed a general denial to this complaint, which put the cause at issue. The cause, being at issue, was by agreement of the parties, made in open court and entered of record, referred to James McKinney and Ferris Nowlin, as arbitrators, with power to choose an umpire. At the same time said McKinney and Nowlin chose Isaac B. Ward as such umpire, which choice was at once entered of record. The arbitrators were authorized by the order of reference not only to try the matters involved in the issues, but also to determine and locate the division line between the lands of the parties, and to call to their assistance for that purpose, if necessary, a practical surveyor. The parties to the suit, by the order of the court, were not permitted to be present while the arbitrators were engaged in viewing the premises or locating the dividing line.

Said arbitrators and umpire filed their report fixing the boundary line between the parties, and finding against the appellant on the claim set up in his complaint. They awarded

that each party should pay one-half the costs of the suit and arbitration.

The appellees filed a motion to set aside the award and for a new trial, alleging, as cause therefor, misconduct of the appellant, in this: That in violation of the order of the court he was present while said arbitrators were viewing the premises and establishing the boundary line, and gave counsel and direction as to the same; that he induced one of said arbitrators to go to his house and remain over night and partake of his hospitality while engaged in hearing said cause, and that he induced two of said arbitrators, while engaged in hearing said cause, to go with him to the hotel and take dinner with him at his expense.

Affidavits were filed by the appellees in support of their motion. Appellant moved to strike out and reject these affidavits, but the court overruled the motion, and he excepted. The appellant then filed counter-affidavits, and upon the final hearing of the motion the court sustained the same, and set aside the award, to which appellant excepted. On motion of the appellees the order referring the cause to arbitrators was set aside, and the cause ordered to stand for trial, to which appellant excepted.

The cause was then tried by a jury, resulting in a verdict for the appellees. Over a motion by the appellant for a new trial the court rendered judgment on the verdict.

The appellant assigns as error:

1st. that the court erred in sustaining the motion of the appellees to set aside the award of the referees.

2d. That the court erred in its judgment setting aside the award of the referees, and especially that part of it rendering judgment for costs against the appellant before the referees.

3d. That the court erred in refusing to modify the judgment as prayed for by the appellant.

4th. That the court erred in overruling the motion of the appellant to reject the affidavits of Maggie Shanks, Eliza

Shanks, Henry Blasdell, Lewis Nowlin and Harry Nowlin, filed with the motion to set aside the answer.

5th. That the court erred in overruling the objection of the appellant to oral testimony of the referees, McKinney and Ward, to impeach the award.

6th. That the court erred in receiving the oral testimony of James Liddell to impeach the award.

7th. That the court erred in setting aside the order of reference to James McKinney, Isaac B. Ward and Ferris Nowlin.

8th. That the court erred in rendering judgment for the costs of the trial before the referees against the appellant.

9th. That the court erred in ordering the trial of said cause by a jury against the order referring the same for trial to James McKinney, Isaac B. Ward and Ferris Nowlin.

10th. That the court erred in overruling the motion of the appellant for a new trial.

As the first nine assignments of error relate to the matter of setting aside the award and ordering the cause to stand for trial as if no reference had been made, it is not improper to consider them together.

In resisting the motion to set aside the award, the appellant filed the affidavits of the referees McKinney and Ward in support of their award. On the final hearing of the motion, the court permitted the appellees to call these arbitrators and examine them orally, in open court, over the objection of the appellant.

By the affidavits filed by the appellees and by the examination of these arbitrators, it is made to appear that the appellant, on one occasion, while the arbitrators were engaged in the discharge of their duties on the premises, brought from his residence a lunch, of which they all partook. The arbitrator McKinney stayed at the house of the appellant several nights while engaged in the performance of his duties as arbitrator. The arbitrator Ward, while engaged in hear-

ing the testimony in the cause, on one occasion took dinner at the hotel at the expense of the appellant.

By section 851, R. S. 1881, any matter involved in a pending suit may be referred, by consent of the parties, by rule of the court, to certain persons mutually chosen by them in open court, if such matter might have been the subject of arbitration.

When the report of such referees is returned, under the hands of the referees, or a majority of them, it is entered on the order-book and has the same effect and is as available in law as the verdict of a jury. The same influences or misconduct that would avoid the verdict of a jury ought to avoid the award.

In the case of *Moshier* v. *Shear*, 102 Ill. 169 (40 Am. Rep. 573), one of the three arbitrators, after his appointment, conversed fully on the merits of the dispute with one who had previously acted as an arbitrator in respect to the same matter, and whose award had been set aside. For this reason the award was set aside.

In the case of *Catlett* v. *Dougherty*, 20 Rep. 714, the party in whose favor the award was made, made a statement to one of the arbitrators, in the absence of the other party, which was intended to influence the award, and for that reason the award was held invalid. In that case the court says that " It is unimportant whether the arbitrator was in point of fact improperly influenced by the conduct of the defendant or not. * * * Courts will not enter upon an inquiry of how far such conduct may in fact have produced beneficial results, but will, at the instance of the party intended to be thus injured, set aside the award."

Conceding that no wrong was intended, still it was highly improper that one of the arbitrators should stop with the appellant and partake of his hospitality while engaged in hearing and considering the case ; and it was also improper that another of the arbitrators should take a meal at the hotel at his expense. It is not difficult to believe that the appellant,

by these attentions to the arbitrators, intended thereby to influence their judgment in his favor. Whether his conduct had this effect or not we will not inquire. Under the circumstances we do not think the court erred in setting aside the award.

As the award was set aside on account of the misconduct of the appellant, we think it was proper to tax him with the costs made in the trial before the arbitrators. By reason of his conduct the time and expense before them became valueless, and we see no good reason why he should not pay this useless expense.

The appellant filed the affidavits of McKinney and Ward, two of the arbitrators, in support of the award. On the final hearing of the motion the court permitted the appellees to call these arbitrators and examine them orally.

It is doubtless true that a juror can not be heard to impeach his verdict. Perhaps the same rule would apply to an arbitrator whose award is attacked. In this case, however, the testimony of the arbitrators had been heard in support of the award. As the object of all judicial investigation is to ascertain the exact truth, we think that if the court had reason to believe that the affidavits of the arbitrators did not state the whole truth, it was in its discretion to call and examine them in relation to the matters about which they had testified in their affidavits. In this case there does not seem to have been any abuse of discretion in this regard.

The reference in this case was to certain arbitrators by name. When the award made by them was set aside it would have been improper to refer the case back to them for a new trial. Unless the parties agreed upon other arbitrators there was nothing left for the court to do but to set aside the reference and try the cause in its regular course. We do not think the court erred in its action in setting aside the order referring the cause to arbitrators, and ordering it tried in the usual course of the business of the court.

As the affidavits filed with the motion to set aside the

award of the arbitrators tended to prove misconduct on the part of the appellant and to sustain the charges contained in the motion, the court did not err in refusing to strike them out. They were proper matters to be considered by the court on the final hearing of the motion.

· It appears from the testimony in the cause that at a time prior to the commencement of this suit, some person filled the bed of Leeper's run, at a point north of the line dividing the lands of the parties to this suit, with brush, stones and dirt, and that by reason of such obstruction the water flowing down said run was diverted from its ordinary course and struck said line at a point some rods west of where it otherwise would have crossed it. The appellant at this point constructed a solid board fence in order to stop the flow of water and prevent it from overflowing his land. On the trial of the cause the appellant offered to prove the cost of constructing this fence, which the court, on the objection of the appellees, excluded, and the appellant excepted. It is not necessary for us to decide whether this, in a proper case, would be an element of damages. It is sufficient to say that in this case the matter sought to be proved is not embraced in the complaint. The complaint seeks a recovery for the damages occasioned by overflowing the appellant's land, washing away tiling, washing stones upon the land, and for injury to the crops occasioned by the overflow, and does not embrace any expenses incurred by the appellant in his efforts to keep the water off his land. We do not think the court erred in excluding this evidence.

Over the objection of the appellant the appellees were permitted to prove by certain witnesses that they had seen the appellant and his hands digging at a point north of the line dividing the lands of the parties, and near the board fence erected by the appellant. The theory of the appellees was that the appellant, or his hired men, had caused the diversion of water of which he was complaining. Under this theory the appellees had the right to prove, if they could do

so, either by direct or by circumstantial evidence, that they were not responsible for the damages sustained by the appellant. How far the evidence admitted tended to establish the theory of the appellees was a question for the jury. It was certainly competent for the purpose for which it was admitted.

During the trial the appellant called one Gridley, by whom he proved that some years prior to the trial he (Gridley) had made a survey of the line dividing the land of the appellant and the appellees. In his testimony the witness referred to certain notes and recorded land-marks in the books of his office. In rebutting, with a view of contradicting this witness, the appellees, over the objection of the appellant, were permitted to read in evidence what purported to be a transcript of certain field-notes from the surveyor's office found in the recorder's office.

As the line dividing the lands of the parties was not involved in the issues between them in this suit, we are unable to see the relevancy of any of this evidence. If it was error to admit these field-notes in rebuttal to irrelevant testimony introduced by the appellant, we think it was a harmless one, for which the cause should not be reversed.

The court, of its own motion, gave to the jury the following instruction :

" 1st. The complaint asks damages against the defendants for obstructing the flow and diverting the course of an ancient watercourse. To constitute a running stream or watercourse, for the obstruction of which an action will lie, there must be a stream usually flowing in a particular direction, though it will not flow continually ; it may sometimes be dry ; it must flow in a definite channel, having a bed, sides or banks, and must usually discharge itself into some other stream or body of water ; it must be something more than a mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary cause ; it does not include the water flowing in hollows or ravines in

land, which is the mere surface water from rain or melting snow, and is discharged through them from higher to lower lands, but which at other times are destitute of water. Such hollows or ravines are not, in legal contemplation, watercourses, for the obstruction of which an action will lie; and if you believe from the evidence in this cause that the only flow of water in said run or ravine, described in the complaint, was rain falling upon and snow melting upon and running down from the surface of an entire tract of higher land into a hollow or ravine, and by such course carried to lower land, then said Leeper's run was not a watercourse within the meaning of the law, and then it would be your duty to find for the defendants."

It is objected to this instruction that it is too refined and restrictive in the application made to the particular case. There is evidence, however, in the record to which it is applicable. It announces the law substantially as it is laid down in the case of *Hill* v. *Cincinnati, etc., R. W. Co.*, 109 Ind. 511. See, also, *Hebron G. R. Co.* v. *Harvey*, 90 Ind. 192.

Some of the other instructions given by the court are severely criticised by counsel, but, under the well known rule that instructions are to be considered as a whole, and not in detached portions, we think they fairly state the law as applicable to the evidence in the cause. *Cairo, etc., R. R. Co.* v. *Stevens*, 73 Ind. 278; *Schlichter* v. *Phillipy*, 67 Ind. 201.

The evidence in the cause was conflicting, and the jury might well have found for either party. We can not disturb the verdict on the weight of the evidence. There is no error in the record for which the judgment of the circuit court should be reversed.

Judgment affirmed.

Filed March 27, 1889.