[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS TO VACATE AND TO CONFIRM ARBITRATION AWARD
Plaintiff Peerless Insurance Company (Peerless) by a CT Page 2914 Supplemental Motion to Vacate applies to vacate an arbitration award to Florence, Roberto (Roberto). Allstate Insurance Company (Allstate) and Roberto move to confirm.
Facts
On April 5, 1986, Roberto was injured in an accident when her vehicle was struck by another vehicle operated by the tortfeasor. Her vehicle was insured by Peerless and that policy provides underinsurance motorist insurance (U.M.) with limits of, $300,000.00. In addition, Roberto was insured under an Allstate policy with U.M. coverage having limits of $200,000.00.
The tortfeasor in the underlying action paid $100,000.00 under its liability policy.
The case was claimed for arbitration for the total U.M. coverage. The three parties; the plaintiff and the two defendants; selected their respective arbitrators; both company defendants agreed to have a one-half vote in the determination of the monetary damage and the three arbitrators, one for Allstate, one for Peerless, and one for Roberto selected as a neutral arbitrator Attorney William R. Moller (Moller).
At the first hearing on December 19, 1990, the arbitrators began to hear the claim of damages and also heard some argument with regard to the order of priority for payment of any award rendered.
Although there was a discussion of a need for briefs on the issue of the order of coverage at the first hearing, there was no final understanding.
At the first hearing, the arbitrators took an oath and an oath was administered to all witnesses. No stenographer was present.
The hearing continued on December 26, 1990, and concluded the evidence that day. At that time the neutral arbitrator called the hearing closed but an agreement was reached by the parties that after the damages were determined by the arbitrators the order of payment would be decided. CT Page 2915
On January 24, 1991, the panel sent out notice of its decision.
The neutral and the Roberto arbitrators found for the claimant and that the total damages were $236,000.00 less the $100,000.00 paid by the tortfeasor resulting in a net amount due to Roberto of $136,000.00.
The two arbitrators selected by the two insurance companies filed a dissent.
At the same time, the neutral arbitrator extended the hearing for further briefs only in regard to the order of payment. On February 22, 1991, Peerless filed its application to vacate "a certain arbitration award" in the instant action.
Peerless objected to any extension of the time limit in the arbitration.
On or about, January 23, 1991, Attorney Elizabeth Schumacher, on behalf of Allstate, requested time to file a brief in the arbitration matter and indicated that the decision was to be rendered within 30 days.
The arbitrators met to decide the final issue of the coverage on July 22, 1991. The decision in regard to coverage was issued on August 5, 1991.
Plaintiff continued to object to the extension of the time limit.
In the majority decision, a pro-rata distribution of the insurance proceeds was rejected and Peerless was held responsible for the full $136,000.00 under a "primary/secondary" rule.
Roberto is the spouse of Attorney William Roberto, a practicing attorney in Hartford County.
During the pendency of this action, said William Roberto, representing one Dean A. Toce (Toce) as a plaintiff, received a jury verdict in the net amount of $547,499.28. Dean A. Toce v. City of East Hartford, docket number 89-0360184. (Toce case).
The legal fee in said file is $192,026.00 as found by the Hon. John P. Maloney.
On July 19, 1991, the arbitrator Moller filed an appearance in addition to Attorney William Roberto's in that case CT Page 2916 to assist in the defense of an appeal.
At no time between Moller's appearance in the Toce case on July 19, 1991 and the issuance of the final decision of August 5, 1991 was any disclosure made to the plaintiff of the relationship between Roberto's spouse and the neutral arbitrator.
Because the chronology would seem to show that the neutral arbitrator had made all findings and decisions in regard to Roberto by January 24, 1991 and the claimed connection between the neutral arbitrator and Roberto's husband does not begin on the record until July 18, 1991, it might be argued that this court cannot conclude that the neutral arbitrator's position indicates "a clear show of impropriety." The Peerless memorandum of August 29, 1991 gives no chronology in regard to these events nor does it give any argument supporting a finding of impropriety based on the actual chronology.
However, the transcript of the hearing of July 22, 1991 reveals the following dialogue:
"MR. COONEY: I don't think there is any sense in getting off of the matter here. I will say I think Mr. Melley's argument raises a question of whether or not we have the authority to proceed, and I think it would be appropriate for the arbitrators to state our understanding on the record as to whether or not the hearing is in fact closed or not closed. My clear understanding for the record is that it was always contemplated by everybody in this room or at any hearing that it would be a two part hearing, that we were going to decide the amount of money and then address the question of the priority of payment between the two carriers. So my understanding is that the hearing has not been officially closed until such time as we make the decision.
MR. MOLLER: Mr. Riley?
MR. RILEY: That's my position.
MR. MOLLER: That is mine, also. Because of the obfuscation caused by Attorney Melley, and in view of the fact there was a counter motion by Attorney Norris to reopen the original part, I think somewhere we are losing sight of the fact that there is a claimant Mrs. Roberto who is being delayed unduly, and I would like to get the matter concluded as quickly as possible. If Mr. Norris is in agreement that we limit this to the coverage I certainly would go along with it." Arbitration Hearing transcript July 22, 1991, pages 7-9. CT Page 2917
This strong language from the neutral arbitrator in aid of Roberto could easily be viewed as improper when connected to his joint business arrangement with Roberto's husband just some three days before.
Law
Our courts strongly support arbitration. Administrative Residual Employees Union v. State, 200 Conn. 345, 348-349; AFSCME v. New Britain, 206 Conn. 465, 469. But in order to strengthen and uphold arbitration we must keep it free of any taint. It must appear to the rational public that the process is clearly fair and that anyone may resort to that process without fear of encountering any bias or interest among the arbitrators.
A rational person could harbor suspicions about the neutral arbitrator's objectivity here without being thought either unduly sensitive or "puritanical." Arbitration must not have such a result.
Application to vacate is granted.
Application to confirm is denied.
NORRIS L. O'NEILL JUDGE, SUPERIOR COURT