[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, the Town of Middlefield (the "Town"), has filed an Application to Vacate Arbitration award pursuant to Connecticut General Statutes § 52-418 and § 23-1 of the Practice Book. The defendant, Local 1303, Council 4, AFSCME (the "Union"), has filed a Cross-Application to Confirm the Arbitration Award pursuant to Connecticut General Statutes §§ 52-417 and 52-420.
The arbitration award in question was issued by a tri-partite panel of the State Board of Mediation and Arbitration on or about July 20, 2001. It resolved a grievance filed by a former Town employee, Charles Burnham, who resigned from his employment with the Town effective January 29, 1999.
Factual and Procedural Background
The Town and the Union were parties to a Collective Bargaining Agreement covering the period July 1, 1998 through June 30, 2001 (the "CBA"). The CBA provides, in pertinent part:
ARTICLE 6 Vacations
 Section 1
Employees shall be granted annual time off with pay for vacations according to the following schedule:
. . .
After 10 yrs. of service 4 weeks
 Section 2
An employee's anniversary date of hire will be used to determine the CT Page 4315 amount of vacation time due to the employee.
. . .
 Section 4
Employees must use their accrued vacation time within one year of the date of accrual except, in special circumstances as determined by the First Selectman, the First Selectman may allow the carryover of vacation time for up to one year.
. . .
 Section 6
In the event that an employee terminates service with the Town, and has provided the Town with at least two (2) weeks notice, pro rata accumulated vacation pay from the employee's anniversary date of hire to the end of the preceding month shall be paid to the employee.
Mr. Burnham commenced employment with the Town on April 30, 1983. After ten years of employment, on his anniversary date of hire, April 30, Mr. Burnham was entitled to four weeks of paid vacation leave. On April 30, 1998 Mr. Burnham accrued four weeks of vacation for the one year period between April 30, 1998 and April 30, 1999. On December 23, 1998 Mr. Burnham submitted his resignation to be effective on January 29, 1999. At the time of his resignation Mr. Burnham had taken 134.9 hours of his accrued vacation time.
At the time of his resignation, Mr. Burnham demanded to be paid for the remainder of his unused vacation time and for his pro-rata vacation time. The Town declined to pay him any vacation pay because it took the position that he had already received more than his pro-rata accumulated vacation and was not entitled to payment for any additional vacation time.
The Union then filed a grievance on behalf of Mr. Burnham in which it took the position that the Town violated the CBA when it failed to pay Mr. Burnham his unused and pro rata vacation pay. The Union claimed that Mr. Burnham was entitled to his unused days for 1998 (three days) plus pro rata vacation pay for 1999 (8/12ths of four weeks).
The issue before the Arbitration Panel was: "Did the Town of Middlefield violate the terms for the Collective Bargaining Agreement, Article 6, Section 6, when it failed to pay Charles Burnham his unused CT Page 4316 and pro-rata vacation pay, and if so, what should the remedy be?"
The award of the Arbitration Panel was as follows:
A majority of the Panel finds the Town of Middlefield violated in part the terms of the Collective Bargaining Agreement, Article 6, Section 6, when [it] failed to pay Charles Burnham his unused and pro-rata vacation pay.
While no pro rata days were due for 1999 because the Grievant resigned prior to his anniversary date in 1999, a majority of the Panel finds there were unused vacation hours from his four-week entitlement on April 30, 1998 that were due the Grievant upon his resignation.
The Town shall pay the Grievant for three (3) days plus 1.1 hours (25.1 hours) of unused vacation time.
Discussion of the Law and Ruling
In New Haven v. AFSCME, Council 15, Local 530, 208 Conn. 411,544 A.2d 186 (1988), the Connecticut Supreme Court reiterated the longstanding principle supporting the autoomy of arbitration and minimal judicial review of consensual arbitration awards:
This court has long endorsed arbitration as "an alternative method of settling disputes `intended to avoid the formalities, delay, expense and vexation of ordinary litigation.' Bridgeport v. Bridgeport Police Local1159, 183 Conn. 102, 107, 438 A.2d 1171 (1981); Administrative Residual Employees Union v. State, 200 Conn. 345, 349, 510 A.2d 989
(1986)." OG/O'Connell Joint Venture v. Chase Family Limited PartnershipNo. 3, 203 Conn. 133, 145, 523 A.2d 1271 (1987). We have recognized that when arbitration is consensual, rather than statutorily imposed, judicial review is limited in scope. Convalescent Center of Bloomfield, Inc. v.Department of Income Maintenance, 208 Conn. 187, 199, 544 A.2d 604
(1988); OG/O' Connell Joint Venture v. Chase Family Limited PartnershipNo. 3, supra, 154; Bruno v. Department of Consumer Protection,190 Conn. 14, 18, 458 A.2d 685 (1983); Carroll v. Aetna Casualty Surety Co., 189 Conn. 16, 20, 453 A.2d 1158 (1983); Bic Pen Corporationv. Local No. 134, 183 Conn. 579, 583, 440 A.2d 774 (1981). If the parties mutually agree to submit their dispute to arbitration, the resulting award is not reviewable for errors of law or fact. Stratford v. Local134, IFPTE, 201 Conn. 577, 585, 519 A.2d 1 (1986); Wilson v. SecurityIns. Group, 199 Conn. 618, 626-27, 509 A.2d 467 (1986); Milford EmployeesAssn. v. Milford, 179 Conn. 678, 683, 427 A.2d 859 (1980); Waterbury v.Waterbury Police Union, 176 Conn. 401, 404, 407 A.2d 1013 (1979). CT Page 4317 Judicial review of unrestricted submissions is limited to a comparison between the submission and the award to see whether, in accordance with the powers conferred upon the arbitrators, their award conforms to the submission. OG/O' Connell Joint Venture v. Chase Family LimitedPartnership No. 3, supra, 153-54; Bic Pen Corporation v. Local No. 134,supra, 584; New Britain v. Board of Mediation Arbitration,178 Conn. 557, 562, 424 A.2d 263 (1979); Board of Education v. BridgeportEducation Assn., 173 Conn. 287, 291, 377 A.2d 323 (1977).
208 Conn. at 415-16.
The Town concedes that the arbitration award in this case conformed to the Submission. However, it argues that "the rationale of the arbitration panel in this case is not merely flawed, but demonstrates a blatant disregard and distortion of the plain language of the Contract." Plaintiff's Brief in Support of Application to Vacate Arbitration Award at p. 6. The Town relies on dicta in Garrity v. McCaskey, 223 Conn. 1,7, 612 A.2d 742 (1992), to the effect that an arbitrator's egregious misperformance of duty may warrant rejection of the arbitration award. InGarrity the Court stated:
[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to52-418 (a)(4) because the arbitrator has "exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." We emphasize, however, that the "manifest disregard of the law" ground for vacating an arbitration award is narrow and should be reserved for circumstances of anarbitrator's extraordinary lack of fidelity to established legalprinciples.
223 Conn. at 10 (emphasis added).
The Court in Garrity upheld an arbitration award notwithstanding the defendant's claim that the arbitrators had misapplied the law governing statutes of limitations, stating that "such a misconstruction of the law would not demonstrate the arbitrators' egregious or patently irrational rejection of clearly controlling legal principles." Id. at 12.
The Town's argument here seems to be based on the assumption that the terms "accrued" vacation time and "pro rata accumulated vacation pay" as used in the CBA are synonymous, such that the 4 weeks of vacation time which Mr. Burnham had accrued as of April 30, 1998 could only be used on a pro rata basis over the one-year period from April 30, 1998 to April 30, 1999. However, there is nothing in the language of Article 6 of the CT Page 4318 CBA which supports such interpretation. Section 4 provides that employees must use "their accrued vacation time within one year of the date of accrual." Arguably, Mr. Burnham could have used his entire 4 weeks of vacation during the month of May 1998, prior to his termination date and could have "accumulated" pro rata vacation time under Section 6 of Article 6 in the amount of 8/12ths of a year, as the Union argued. Based on this interpretation, the panel could have awarded Mr. Burnham the 25.1 hours it did award him, plus "pro rata" vacation time that he would have accrued if he had stayed until his next anniversary date. Therefore, the arbitrators clearly did not exhibit an "extraordinary lack of fidelity to established legal principles" such that the award should be vacated under Connecticut General Statutes § 52-418 (a)(4).
Based on the foregoing, the Application to Vacate the Arbitration Award is denied and the Cross-Application to Confirm the Arbitration Award is granted.
 By the court, Aurigemma, J.
CT Page 4319